The statutory language in this case is clear. Unless an arbitration agreement carves out Dodd-Frank whistleblower claims, it is invalid and unenforceable. Compliance with this statute is easy. All the employers had to do was modify and revise their arbitration agreements to make them enforceable. Accenture chose not to do that, even though its lawyers recommended it, until after they fired Mr. Santoro. The Supreme Court in the CompuCredit case cited the exact provision at issue here as a model of clarity in restricting the reach of the Federal Arbitration Act and in eliminating arbitration. The only remaining issue in this case is whether the plain language of the statute means what it says. It says that agreements that don't comply with the form prescribed by Dodd-Frank are invalid and unenforceable. Do you think you have to read the language of a statute in context of that statute? As a general proposition, yes, but not to defeat the plain language. If it's clear enough, if the provision is clear on its own, you can't Do you think you can take any one sentence from any statute and read that, what it says on its face, with no context, and that's what you have to do? No, generally, statutes are read in context, but this fits because I'm asking, so then, what is the context of this language? Do you think it's in the context of Dodd-Frank, or just in the context of law generally? Well, it's a part of the Dodd-Frank, but Dodd-Frank I'm asking that question. I know it's a part of Dodd-Frank. I said, do you think this has to be read, this language, has to be read in the context of Dodd-Frank, or the fact that it's in Dodd-Frank has no bearing on it whatsoever? It's just a statement of general law. I'm asking you, what do you think? It's clearly part of Dodd-Frank. But that's not what I asked you. I know that. I'm asking you, is your view that to read this provision, and to understand it, you have to read it in the context of Dodd-Frank, or the fact that it's placed in Dodd-Frank doesn't matter? It could have been placed in Obamacare. It could have been placed anywhere. Is your view the context of Dodd-Frank doesn't really in any way matter? Well, obviously, we agree that it has to be read in the context of Dodd-Frank. However, that doesn't change the result here. Dodd-Frank, well, it might. You have to allow it might change it, because it could be read in the context of Dodd-Frank, as it's limited to the cases covered by Dodd-Frank. No, Your Honor. That would be torturous reading of the language itself. Let's start with the language. No, then just answer my question. I want to be sure. I think your position is that it — does your view of this language change depending on where that language is found in the law, or it doesn't matter? It's a statement of general law about arbitration agreements, no matter where this paragraph is found. That's your view, isn't it? It's neither extreme. While I agree, generally, that provisions are read in the context of the statutes where they're contained. This is a 2,300-page statute. It also is read plainly, and here it's a rational way to get employers to change their agreements. But you haven't answered my question. Well, I'm trying to get there. Well, all you have to do is answer it. Your view of it is — I'm not trying to badger you. I'm trying to understand it. You believe this language, no matter where it appeared, anywhere in federal law gives you the same result, that it covers all arbitration agreements. Don't you think that? Well, yes, if that sentence applies anywhere. But that's part of the Dodd-Frank provisions. Dodd-Frank is replete with provisions that limit arbitration, and many of them are worded differently. In fact, we have one in our addendum, which specifically applies to claims, but includes any claim under any federal law, specifically including more than Dodd-Frank. And that's, of course, 15 U.S.C. 1639C. It first says no residential loans can contain arbitration agreements in the future, but then on subparagraph 3 as to existing agreements, it says no provision of residential mortgage loans, blah, blah, blah, shall be applied or interpreted so as to bar a consumer from bringing an action in an appropriate district or United States under this law or any federal law, any other federal law. So Congress specifically in other parts of Dodd-Frank prospectively said it applies way beyond Dodd-Frank. There is a great mistrust of arbitration in Dodd-Frank. It is a cutback on FAA, and the Supreme Court's case of CompuCredit cited the provision we're talking about today as a clear example of cutting back on the Federal Arbitration Act's jurisprudence. So the only issue is, does it apply to agreements? And it's a rational way to accomplish the employment provisions of Dodd-Frank. Employers, all they had to do was revise their agreements to comply, because many employees look at their agreements, and if the agreements themselves on the forced corners say you have to arbitrate whistleblower claims, they wouldn't know any better and they'd be forced into arbitration when Congress clearly wanted to eliminate that. So Congress said, employers, you cannot force employees to arbitrate these claims. Now, they could have said, and if you don't revise your agreements, you're subject to a fine, or we'll have an audit, or we'll have a regulatory scheme to enforce, to make sure you change your arbitration agreements. All of that is much more complicated. This is so self-enforcing, it's brilliant. Government doesn't have to get involved at all. It says, if you want to keep arbitration as the common law and other statutes, fine, but you have to revise your agreement. You have to put notice in the hands of your employees that specifically carve out whistleblower claims, as Accenture and most employers have now done, as far as we can tell in our office. The thrust of Accenture's argument, though, is that the statute applies only to claims and not to agreements, but that's not the structure of the statute. What it says is, no pre-dispute arbitration agreement shall be valid or enforceable if the agreement requires arbitration of a dispute arising under this section. It applies to agreements, not claims. Contrast that with the appendix, it's four pages from the back of the blue brief, where it says claims. Here, on the mortgage ones, they said, you can't arbitrate any claim under any federal law, but it leaves intact arbitration agreements under common law and state law. So the same argument Accenture makes, if they use different language regarding arbitration, the same statute, it has to be a different effect. When they want to eliminate just claims, they can. So it is a rational way to get employers to change the agreement. There is a penalty. If you don't carve out the claims, you lose the right to enforce it across the board, and we know employers love their arbitration agreements. This takes regulators out of it, it takes the SEC out of it, you don't have to have fines, you don't have to have anything else. The other arguments Accenture, I don't think are worth much talk. It's obviously not a retroactive application, since the contract was renewed twice after the passage, and the conduct at issue in the lawsuit is a firing that happened more than a year after the official enactment date. If there are no questions, I'll reserve the remainder of my time. Thank you, Mr. Cerna. Mr. Komen. Good morning, may it please the court, Jonathan Komen for the Appley. Plaintiff's argument that Congress invalidated innumerable arbitration contracts in their entirety has been rejected by every single court that has addressed the issue. What about the specific language makes your argument? Doesn't he have better of the argument on the language of the exact words he's pointing to? With respect, Judge, I said no. Tell me why not. His argument is entirely based upon the implicit and erroneous assumption that the word agreement means the entire arbitration provision. But nowhere in the statute did Congress say agreement meant the entire arbitration provision. In the Supreme Court in Rent-A-Center, a case we cited and he failed to cite, made clear that arbitration provisions are not single, monolithic agreements. Instead, they have multiple subsidiary agreements. So the arbitration provision in this case, Clause 4, is not one agreement. It's one provision, but it contains multiple agreements as the Supreme Court made clear in Rent-A-Center. We cited that case throughout our briefs, and in his reply, Mr. Santoro had no response whatsoever. So that provision is multiple agreements. But also, as Judge, as Your Honor noted earlier, you have to look at the provision in context. What he does is he pulls out one isolated paragraph. I want to make that clear. I don't know if I noted that. I asked that by way of question. And I'm asking you the same thing. Sure, Your Honor. And so what he does is he looks at one provision within one subsection of that section. But that section of Dodd-Frank, 748 and 922 likewise, is all about whistleblowers. The beginning, middle, and end is all about protecting whistleblowers. It prohibits retaliation against whistleblowers. It provides a cause of action to whistleblowers. Do you think his argument, I asked him, don't you think his argument is premised on that language could appear anywhere? And he would give the same meaning, no matter what statute it's in, as long as those words are in federal law, his argument would be exactly the same. Right. That is his argument. And that's no way to read statutes. Because as the Supreme Court and this Court have said time and time again, you have to read the statute as a whole. You have to look at the structure of the statute. And this statute was about protecting whistleblowers. By way of background, you originally had in Sarbanes- By the way, didn't Congress know how to limit the language? Didn't Congress, haven't they shown us in other statutes they know how to limit, put a limitation on language like that? On language? Yeah. And this one's actually limited, because you look at the provision- Let me say limited in a way that makes it clear on its face. It only appears to disputes arising under this act. Congress knows how to do that, don't they? It does, and sometimes it is more clear. But if there's any doubt whatsoever, and we're not saying the statute's abundantly clear in its face. We're saying the statute's ambiguous, which it is. Congress could be more clear. It could have been less clear. If it's ambiguous, then how do we resolve it? Then you have to affirm the decision below for a few reasons. First and foremost is you have the backdrop of the Federal Arbitration Act, the FAA. And effectively- Anything in legislative history responds to a statement to talk about what this section means. Not in the House reports, but here's the background. You had Sarbanes-Oxley, which provided a cause of action to whistleblowers, but said nothing about these pre-dispute arbitration provisions. So the Second Circuit in Guyton said these Sarbanes-Oxley disputes can be arbitrated. And so the Dodd-Frank provision, 922, is a response to Guyton. It makes clear that these whistleblower disputes can't be shoved off to arbitration in a pre-dispute arbitration agreement. So that's the legislative history. It's a response to Guyton. And the structure of the statute's consistent with that, because the beginning, middle, and end of these provisions is all about protecting- Let me ask you a question. Isn't all this premised on what the court has said, which may be a fallacy, and that is that Congress knows what they're doing when they pass the statute? They know the language of it. That is the legal fiction that courts subscribe to. And the reality- It sort of runs us in a problem sometimes, doesn't it? Sometimes. And the reality is Dodd-Frank is an 848-page block. You know my background? You know my background? Yes, Your Honor. You know I used to work for the Senate staff? Yes, Your Honor. Do you know I have drafted legislation that the Senate's passed? I'm aware of that, Your Honor. Would it surprise you that not only did they know what it meant, but sometimes I didn't know what it meant? I wouldn't- This law, that's the concern for me. I wouldn't think you never knew what it meant, Judge Shedd, but- But I'm just saying, accept that from a hypothetical, then. No, but yes. Let me say, take a minute and give you- I worked on a conference bill one time, and it was a conference bill is you have the House and the Senate go together to try to resolve the differences. And what really happens is the members push their staffs in a room, maybe your background too, and you work through it. And we couldn't resolve one section. We told our sponsors, we've got everything done in this 500-page bill or whatever it was, but this one section, we just can't resolve it. They were anxious to get to a compromise, so guess what that section said? Staff will resolve this later. That was passed into law. If you looked at that law, that we find ourselves, I think, on this, you look at- is there anything about that language pre-dispute arbitration agreements? No pre-dispute arbitration agreement shall be valid or enforceable if the agreement requires arbitration of a dispute arising under this section. On reading that language, why doesn't that language, in its broadest reason, cover what the other side says? Because the word agreement does not mean the entire provision, as the Supreme Court made clear in the Renta Center. But I said, what in that language says that? Oh, nothing. That's why it's ambiguous. And because it's ambiguous, you've got to read that provision in the context of the statutes. What's ambiguous about agreement? What's ambiguous about agreement? Agreement could mean either the entire contract, or it could mean the subsidiary agreement to arbitrate retaliation claims. Well, neither of them will be valid. No arbitration agreement shall be valid. There's not any ambiguity in that, is there? But it says, if the agreement requires- and this agreement, this arbitration agreement, does not require arbitration of whistleblower claims, because we're not looking at the contract as a whole. We're looking at the particular agreement to arbitrate ADEA claims. But at the very least, Your Honor, as the Court made clear in Renta Center, there's a separate agreement of who's going to decide arbitrability. And here, there's no dispute that this contract has a provision, a delegation provision, as the Supreme Court called it in Renta Center, which says the arbitrator decides arbitrability. And we explained in our brief on page 43, at the very least, the arbitrator has to decide this arbitrability question. And Mr. Santoro's reply says nothing about that. So if there's any doubt whatsoever- and we don't think there is, because we think it's clear what's going on here- but if there's any doubt, this entire dispute should be resolved by the arbitrator under Renta Center, which makes clear that when there is a delegation provision, the arbitrator gets to decide arbitrability. And that would be the end of the case with one caveat, which is issue preclusion. And there's also retroactivity. But on issue preclusion, that issue the Court can address, even if it says the rest of the issues- Is there any indication in the record anywhere that any member of Congress at the time this language was approved had any idea that it would affect every arbitration agreement in the world? Absolutely not. There's no suggestion anywhere. And you would think that for such a monumental sea change in employment law, someone somewhere would have said something. And no one said any such thing. No one thought this was anything more than a response to guidance. No one thought this was going to wipe out millions of employment agreements across the country. No one thought that. And all five courts- Just as Scalia says often, he doesn't care what they thought and what their intent was, it's what they wrote that he construes as on the Supreme Court. And we likewise, as we take our direction from the Supreme Court, we also stuck with what was written. My question I ask is- that was just sort of a segue to the side. But the real question is, is there any way that a whistleblower could fall under this arbitration would be required to- I know, again, about the Carvine, you have a narrowing provision. But could a whistleblower be forced to arbitrate under this? Because you say it's not related to whistleblowing, but could a whistleblower claim be arbitrated under this agreement, total agreement? Under this agreement, which predates Dodd-Frank, yes. Yes, because of the retroactivity question. Right. So it could. It could. And seven of the nine courts that have addressed the arbitrability question have rejected plaintiff's position here. And this is actually the a forciari case, because in all of those cases on 748 and 922, the courts were assessing a whistleblower's claim. And the court said Dodd-Frank 748 and 922 do not apply retroactively even to whistleblower claims. Well, this case is the a forciari one, because this is not even a whistleblower. The expectations that were settled, that plaintiff is seeking to unravel, are monumental compared to the expectations in those cases. Because again, those cases were just whistleblowers. This is the millions of employment contracts that had the standard language, which say, hey, you can arbitrate. Every one of those contracts would be invalidated under Mr. Santoro's reading. So again, this is the a forciari case. Seven of nine courts rejected that position on the much different case of just whistleblowing. This is the a forciari case. There's no basis unraveling all those settled expectations. As this court recognized in Raymond James, among others, you have settled, you have justified expectations in arbitration contracts, which are valuable economic rights because of efficiency, speed, and economy. And those justified expectations are being destroyed completely in all these cases, in the millions of contracts, in light of the reading that plaintiff is giving. And that interpretation has been rejected. The retroactivity issue, seven of nine courts ruled against it. But on the bottom line issue of whether or not Dodd-Frank even applies to non-whistleblowers, it's O for five. Five courts have reached the issue. Five courts have rejected it. The Fifth Circuit, two district courts, the D.C. Superior Court in this case, when he took the first bite at the apple, and then EDVA, that argument is O for five. The retroactivity argument is two for nine. And again, this is the a forciari case. So Mr. Santoro's position has no merit on either of those two grounds. But again, if there's any doubt whatsoever, any doubt, that under Renta Center, this court should allow the arbitrator to decide the arbitrability question. We don't think there's any doubt. Congress did not mean to obliterate millions of arbitration contracts. Congress did not intend to impliedly repeal the FAA, which is his position. The FAA has been in effect for decades, and it reflects a strong national interest in arbitration. Well, you say the language is ambiguous, don't you? The language is ambiguous. And Justice Scalia, when he allows the language is ambiguous, he has to look somewhere, doesn't he? Absolutely, Your Honor. I mean, according to unusual punishment, he would look, he would say, look to the standards at the time that language was adopted or used. Isn't that correct? Absolutely. So I'm not suggesting we get to it. And I'm not suggesting Justice Scalia would agree with me on this. But I at least think if the language is ambiguous, and I'm not saying that it is, if you think it's ambiguous, where would you tell us to look when you suggest you look to see if there's any any legislative history or any comments that everybody would agree based on legislative debate what Congress meant that word to be at the time they passed that word? I would look to four things. I'm saying, but you would agree with that process. You would agree with the process to see if there were any such language or debate or history or announcement, wouldn't you? I would. But you just say part of that process is it's not there. There's nothing there. All we have is you have guidance, which interprets Sarbanes-Oxley. So what do you do with, how do you resolve the how we resolve that ambiguity? I do a couple of things. One, you look at rent-to-center, which makes clear that an arbitration contract has multiple agreements. Agreement does not mean the entirety of the contract. I look at that. If I think it's not ambiguous, if we think it's not ambiguous, do you lose? No, no, Your Honor. Because then how do you win if it's clear on its face and the word the words themselves are unambiguous? How do you win? Three things, Your Honor. First of all, even the case that he cites, Ron Payer, Supreme Court case, says if it would lead to results, they're demonstrably at odds with the intent of the drafters. Absurd. You don't uphold the plain language. How do you know that? That's what I've never quite understood. How do you know that something's absurd in light of what the drafters meant? Can't they pass a stupid statute if they want to? Because Congress did not intend to obliterate millions of arbitration contracts. How do we know that? That I don't understand. That absurd language, sometimes it strikes me. I know that's what we say. I'm quite puzzled. How do we know when it's absurd? If you allow Congress can pass a stupid statute if they want to, why can't they do that? I trust that judges like Your Honors can recognize when a result is demonstrably at odds with the intent of the drafters. This was a statute designed to be a response to Guyton. My point is this. Isn't it not so much what the intent of the drafters is other than what the statute where it's placed in says? Do you think it goes beyond that? This is just an interesting question I'm asking you. When you look to whether or not it's absurd, do you look to that really in the context of the statute where it appears? I think you do, but I think that looking at the statute and the structure and where it appears also goes the first step analysis of construing the plain language because you don't read isolated snippets by themselves. To understand the plain language, you look at the structure of a whole. So that structure animates both questions. And context and the context of the statute. Right, and in here the context is Dodd-Frank plus the FAA and he's seeking an implied repeal of the FAA and there has to be a clear manifestation as this court said in Enri and there's no manifestation that Congress intended to repeal the FAA. Nothing whatsoever and it's no surprise that five courts have rejected the position of Mr. Santoro. Five courts have said these Dodd-Frank provisions apply only to whistleblowers. So that's one ground to reject Mr. Santoro's position. Also you have the severability clause in the contract which he never grapples with and that clause essentially says if any part of this is invalid or unenforceable then you simply excise that part and you retain as much as possible. So here there might have to be a carve-out. The statute says you can't apply this to whistleblower claims but severability clause clause 7 says the rest of the provision remains. That's another basis to reject Mr. Santoro's position. Then you have retroactivity. Seven of nine courts have ruled against his position on retroactivity and this is the A4 Sciari case. You have the Supreme Court of West Virginia among the seven courts rejecting that position and again this is the A4 Sciari case but if there's any doubt whatsoever then again under Rent-A-Center these issues of arbitrability should be decided by the arbitrator. Yeah but Rent-A-Center that analysis is almost it's like the camel's nose under the tent. I mean once you get the camel's nose under the tent and arbitrate that's the whole idea. If it's invalid then people ought to have access to the courts. So that's sort you know sort of a hybrid type remedy isn't it? If there if it's no arbitration requirements then like anyone else you go to courts but you're saying well no we're applying that. Let's let an arbitrator decide what those claims are and here it seems to be their argument under Dodd-Frank. No we don't have to do that. If we apply them as least they're saying I don't think that seems to be a weaker argument in terms of addressing what you're trying to get at because I think the point is Dodd-Frank was trying to make sure that whistleblowers would be would not be interfered with and we have free willing opportunity for people to to disclose the wrongdoings that may have gotten us into other things and therefore I guess in the sense your argument is that we can comply with the law by tweaking every agreement to make sure none of them would be enforced as whistleblowers. That's your that's your basic argument? Well our argument you don't have to reach that rent-a-center issue right because we think looking at the FAA and the structure of the statute this is something that you know it's clear that Congress did not intend to wipe out millions of arbitration agreements and the court can stop right there. I was just saying that if there was still a doubt at the end of that right you could but the court can stop before you can get there but there's a separate third ground for rejecting Mr. Santora's position and this is very simple it's issue preclusion. He already presented these exact same issues in the D.C. Superior Court the same exact ones and he lost there and he's simply trying to get two bites at the apple. This is standard black letter textbook issue preclusion and there's one point in his reply I want to he couldn't have raised these federal claims in his D.C. case and that's just completely wrong on the law and the facts. Do you do you find any assistance in your argument in the word requires? I do your honor. Tell me why. Because there are two things first as we explained in our brief in this case that nothing is required because there's no whistleblower claim but also because of our contract the severability provision what are because that provision we don't require that. No no I was wondering do you I'm not sure this carries much I'm just asking. Yeah. Do you think requires could be read in a way that's different than covers? I think it could. You see what I mean just the word requires being read with some connotation that the agreement itself would specifically require that rather than it just looked like it cover it could cover those type of. I think that's right your honor I think it requires some the word requires connotes some more specificity and when you take that point in conjunction. In other words you you you think that perhaps a way to read this on its face would be if the agreement if the agreement wherever and it is if it had a requirement that whistleblower type things are or invalid I mean you cannot had to be arbitrated that that might then that specific requirement in the agreement might lead to an application of this if it's stated in a positive way. Do you think that? I think yeah I think that very well might have been congress's intent and when you take that point in conjunction with the severability provision it's clear we're not requiring arbitration of Dodd-Frank claims because what the severability provision essentially says is we want to have arbitration as far as law allows and if law says you can't do something that's fine you can't arbitrate that but the rest of the agreement stands and then if I have I know I'm over my time but just to say one thing about issue preclusion he says he couldn't have raised his federal claims because he had to wait for the EEOC letter that's incorrect as EEOC's own website makes clear with ADEA claims you don't have to wait for the right to sue letter you can file your claim in court anytime after 60 days after filing your charge with the EEOC he filed his charge with the EEOC December 9, 2011 he didn't file his complaint in DC until March 6, 2012 that's more than 60 days after he filed that charge he put all these claims all the federal claims in DC he didn't do so probably because he's trying to preclude us from removing but in any event he had one bite at the apple he lost at DC he shouldn't get a second bite at the apple issue preclusion is an independent grounds for affirming the decision below unless this court has questions I'd be happy to rest in the briefs okay thank you so much thank you your honor Mr. Chertoff thank you the main problem that Accenture has is the language is extremely clear in both their arbitration agreement their arbitration agreement covers everything every claim under federal state law common law which violates the Dodd-Frank provision and the language of Dodd-Frank is very all they had to do was revise it which they've since done do you use the word requires interchangeably with covers I think yes that's how you read it you say that's what I can't see any difference there in this context the it's as if let me give a hypothetical if it's if congress in a credit card bill said no credit card agreement can be enforceable unless the interest rate appeared in 18 point type bold letters on the first page and a credit card company comes in and says all right our agreement doesn't comply with the form but we have a savings clause or we have something else or please don't invalidate our agreement when congress prescribes the form you got to finish that hypo it's open-ended you got to at least match it a little bit when congress passes a law I'm sorry no no I like the one about the points how does what provision gets around not having the 14 point warning in your hypo nothing the credit card company has to revise it or they can't enforce their their interest rate that that would be that's my hypothetical is that when congress prescribes the form you can't come in and say well we have a sentence buried in the miscellaneous saying well if we don't comply with some law it should be deemed to comply with the law but that that provision would impact all of the people who hold the card right and and this but but that's where you lost the apple and orange here this has nothing to do with whistleblowing it prescribes this form the dodd-frank act right prescribes the form in which employment arbitration agreements must be in order to pass muster to be valid after dodd-frank whether or not they have any relationship to dodd-frank again whether or not the claim has any relationship to dodd-frank we've got to buy that in order for you to win don't we yes although of course you have to be a covered entity so essentially the severability argument that mr cone just made because the the severability argument is predicated on the employment agreement that does not um does not say if any agreement is invalid it says if any provision in this agreement is invalid so why doesn't the severability argument kick in if we were to agree with you otherwise why wouldn't the severability argument make a difference here primarily because of the way they've drafted their own arbitration agreement unlike rent the center i want to talk about the severability provision uh that in the agreement under miscellaneous in the employment contract where it says if any provision of this agreement is left invalid or unenforceable the terms of individual provisions as opposed to a general agreement regarding arbitration correct probably not because under federal under buckeye severability is in the state law issue in the arbitration context but putting that aside that's not we don't have to get there if there was a provision that could be excised they would be in better shape on that argument but there isn't their entire positive arbitration agreement is in a single sentence it appears in joint appendix page 24a and it basically says with a lot of parentheticals any and all disputes under any law must be arbitrated and then in a parenthetical it says including validity scope enforceability blah blah blah there is nothing to be excised if they could come in as in rent a center for example which really did have it had the arbitration of disputes on page 29 and the delegation agreement on page 32 they were really separate provisions there rent a center on its facts doesn't say that every one line arbitration agreement is really 10 or 20 or a thousand separate arbitration agreements for every statute here they have a single arbitration provision any and all disputes relating to this contract or employment have to be arbitrated period if we excise that sentence i'm fine with that we win if you don't excise that sentence we're back where we are we have to construe the statute to say this form of agreement is invalid to your point you're saying nothing to sever exactly what about severing the the word any and all and and it wouldn't be in at all it didn't i guess it still says disputes relating to employment have to be arbitrated so it's so violence dodd-frank but really they have not argued anything we've been been around this while that there's any particular provision that you can excel and leave them forcing mr santoro to arbitration and not violate dodd-frank's foreign prohibitions you're saying a law can violate all common sense but still be the law isn't that pretty much what your position comes down to no you're right eccentric looks at this and it's interesting to me they cite zero legislative history and therefore they say it supports us if you come at it saying well congress couldn't have invalidated publicly this only applied by the publicly traded companies this provision that congress couldn't have wanted publicly traded companies to have to revise their arbitration agreements well then you're going to see that in the language but the language is clear and it's a very sensible non-regulatory no fines it's an easy way to get employers to actually change their agreements and it's worked every arbitration agreement i've seen in our practice in the last couple years carves out dodd-frank claims you didn't need to set up a fine you didn't need to set up audits you didn't need to set up anything it worked and it can contrast it it worked me in that sense because it's almost like a lawyer relief bill i mean you had to hire lawyers to do that but in a sense it works by saying from now going forward no arbitrary arbitration agreement provision or whatever for publicly traded companies are going to apply to whistleblower disputes and claim that's the period you don't that's that's the practical side of it isn't it that's what really yes that congress was doing yes dodd-frank wanted publicly traded companies to notify people if you want to blow the whistle you have the right to have some wordsmith pay a thousand dollars an hour to put that in and can it be categorically that way it was almost like the 13th amendment was the past or the 13th amendment is the best one any contract that you have i mean it's just not going to apply to forced servitude but you answer well no no i mean but if you have others that you say you employed other people and you paid them money others you didn't wouldn't it be the effect of anybody that you in your employer that's there by forced servitude it is from now on null and void but you're saying somebody to go around to every contract in the whole america and actually put in and that what your argument is no your honor publicly traded companies revise these documents all the time there's new compliance issues all the time when sarbanes-oxley came out there was training and compliance every publicly traded company did it when dodd-frank there was there was millions of effects of dodd-frank on publicly traded companies the way they did business having to revise their arbitration agreements or send out an email saying here's a new paragraph was easy we get it in credit cards and health insurance you get letters in the mail all the time but that doesn't mean anything because any good lawyer could look at a statute and go my gosh it can't possibly mean that but i guarantee you somebody's going to say it means that so my advice to you client is change your arbitration agreements i don't think the statute requires it but i'm telling you it's sort of to prevent litigation over that issue doesn't that make sense well isn't that a justification for why you change it not because the statute requires it but just because somebody's going to make an argument that it requires it that's certainly possible too but getting back we should be tied to the words of the statute the statute is unambiguous and clear as can be it applies to publicly traded companies mr santoro's firing was a year and a half and two new contracts after let me ask just if you had an arbitration agreement about a bank on a credit card or something like that a federal statute and let's just presume that the statute arbitration statute on bank arbitration and credit cards says in any arbitration it's just a freestanding section in any arbitration the customers or the claimant's bank must first post a thousand dollar amount in case the arbitration benefits the person bringing the arbitration got me i think so would that apply in every arbitration in america no if you wanted to bring an arbitration under under a plea under an employment agreement some your bank would have to first post a thousand dollars would that language apply i i don't i guess i don't understand it sends me how it's worded when it hears how it's worded in any in that bank bill there's a section a freestanding section and it says this you know this is a this is a bill to uh protect customers on um you know credit cards or some such thing something some such thing and one provision freestanding provisions and it goes through and says these disputes will be arbitrated and there's a freestanding provision that says in any arbitration comma the the bank the customer or the claimant whichever the other party is bank shall post a beginning of arbitration and that's all that language says does that cover every arbitration agreement in america on every subject if the hypothetical is what the bank have to post a thousand dollar bond in a case where it's not a party to the arbitration that seems like a stretch to me your honor but we're not asking no no that's what the language says your honor no no no the language says that so is it your view of the law that since that freestanding provision that's all it says in any arbitration the customer's bank must post a thousand dollar surety bond before the proceedings begin would that apply case i think it would be justified for the court to have to find some support for the notion that a non-party to an arbitration has to post a bond for that arbitration that's what the law says it strikes me as quite different than a lang that that dodd frank which your theory is not any different no it's not your honor because dodd between publicly traded companies and their employees and it specifically talks about what form their arbitration i know this much so then you say you first started your argument i think your answer was either implicit or explicit that this provision of law is this language applies no matter where it's written that's what you said it's a general provision of law and you don't look to the context of the statute well you do for coverage it wouldn't apply to to a small shop that's not publicly traded well but then why do you do that because it doesn't it why do you do that because it because the section applies to publicly traded companies it's the same reason that we haven't relied on this provisions that clearly eliminate mortgage arbitration what does it say that that section applies to publicly traded corporations in the beginning of the whistleblower section i hope i'm reading i think i'm reading it right this says it says pre-dispute arbitration agreements period no pre-dispute arbitration agreement shall be valid or enforceable if the agreement requires arbitration of a dispute arising under this section i believe that in that same chapter it talks about covered entities as being publicly traded company but if that's a necessary decision i can't find it on my feet in this moment but let's compare but the point is but the point is the argument then is you do look to other places in the statute for application of this provision that's what you think i believe i answered yes though you have to do it in context but what what where we get off the train here is it essential with no support says i just don't like this result therefore it couldn't have been what congress intended but they cite nothing i see the result is very logical if you want employers i know you see it but my question is do we look at the rest of the statute to find context yes or no you say we look at it for some purposes but not for other purposes i said well if i was unclear obviously you read the statute in context i think that's a general provision but you can't use that provision a general statement of statutory construction to vitiate the clear language of the statute and here it's such a rational way to get there how would congress otherwise get employers to change the agreement you've made that argument okay and now i want to compare to if you four pages back from the end and the addendum to the blue brief in the mortgage context congress explicitly prospectively said that without invalidating the mortgage agreement they said the arbitration provision stands it just can't be enforced on any federal statutory claim what if in my hypothetical the statute said this applies to any person who has a credit card in america they can do that i know they can and then that language on down there about any in any arbitration agreement you first have to post and so if anybody in there has a credit card then in any arbitration agreement the bank would have to post a thousand dollars you know a wise judge once said congress can pass a stupid law congress he was wise that same wise judge ask you a question congress could do that and you and your but your analysis would be then anybody who went arbitration for any reason any reason an employment contract otherwise their bank would have to post a thousand dollars i think other provisions come into play at some point there's a due process concern if a non-party has to be no no no wait one second bond you may be exactly right i'm talking about statutory construction i think you have to say that under my hypothetical if the statute is aimed at this applies to all bank credit card holders and that sentence in there says in any arbitration any arbitration the person the credit card holders bank must first post a thousand dollars then you would have to say you would say i think that that would apply to any arbitration agreement that the credit card holder has whether it's with the bank or not i find it hard to believe i'd argue that a non-party would have to post the bond i think there are other provisions but what is the language what is the language that i gave you would say that's not so my knowledge of due process law that a non-party can't but that's that's not that's the constitutional question that's not a statutory interpretation but a constitutional question can invalidate another a statute that otherwise is there too you'd have to say your honor that's what i think it means but thank god we got a constitution but i enjoyed the statute as clear as can be it accomplishes a valid purpose in a rational way it doesn't tread on any vested rights because the contract wasn't vested it had renews every year and the firing happened more than a year after the effective date of the act thank you thank you so much all right we're going to come down greek council and proceed to our last case
judges: Roger L. Gregory, Dennis W. Shedd, Barbara Milano Keenan